WANZER et al. *vs.* HOWLAND et al.

APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard November 22, 1859.] [Decided December 14, 1859.

*Creditors' Bill—Jurisdiction—Pleading—Trial.*

Where a creditors' bill showed that judgment had been entered and execution issued thereon, which were confessed in the answer, it is not competent for the defendant to show that no such judgment had in fact been entered, and thus deprive the court of jurisdiction of the case.

If a court have jurisdiction of the subject matter generally, and whether it has in the particular case, depends upon some fact to be tried; and if that fact be established by a confession in ·the pleadings, then the jurisdiction has attached, and the parties are estopped by their pleadings to inquire into the fact of jurisdiction.

If a party admits a cause of action set up against him, in a suit before a court authorized to render judgment for that cause of action, such admission does not confer jurisdiction by consent upon the court, even though the cause of action did not exist, but simply admits by the pleadings, facts which it would otherwise have been necessary to establish by evidence, in order to show that the cause of action existed; and the existence of such fact being established, whether by the pleadings, or by proof, the judgment cannot be attacked on the ground that the jurisdictional fact did not exist at the time.

If a court should decide that it has power to try a cause and render a judgment, where by law it has no such power, that decision does not give the power; but the judgment may be questioned in any other court. There is a clear distinction between the finding of a jurisdictional fact, and the decision of a court. that as a matter of law, it has jurisdiction over a cause of action, when the jurisdiction does not exist.

When allegations in a cause of action are so made that the court has authority to proceed and try them, and to render judgment according to its finding, then it has jurisdiction of the subject matter, not otherwise.

This was an action commenced in the circuit court for the county of Racine, by Richard M. Wanzer, David Foote and John A. Kerr, by creditors' bill, October 20th, 1851, against Richmond W. Howland, A. C. Barry, P. Hardy and O. Howland. Most of the facts of the case are stated in the opinion of the court, and will be omitted here. The bill, after stating

the recovery of the judgment for some $900, also alleged that the defendants in January, 1851, were possessed of goods, accounts and property to the value of $13,000, and of other goods to sell on commission, to the amount of about $4,000 ; and they sold the whole to John N. Knapp for $5,861 90, for which he gave his promissory notes, payable in one, two, three, four and five years, without interest, and a debt due to Mark H. Newman & Co., whose agent he was, and which he promised to pay ; and that one half of the amount of said notes were delivered to Barry, and one half to Howland. The complainants charge that the consideration was inadequate and fraudulent and void as to the defendants' creditors. That defendant Howland sent his notes against Knapp to his father, Oziel Howland, to secure him $1,000, money advanced by him, which complainants aver on belief to be a pretense to cover the property, and also to secure William H. Jenks and Otis White for advances to the amount of about $1,300. The complaint also charges that Oziel Howland procured the defendant, Phineas Hardy, to come to Racine to make disposition of the property for the benefit of the defendant, Richmond W. Howland ; that he brought the claims of the defendants, Oziel Howland, William H. Jenks and Otis White, and procured Barry and Howland to confess judgments thereon to the amount of $2,300 ; that Hardy purchased Knapp's interest in the goods, and also a judgment of about $2,400 in favor of A. S. Barnes & Co., and upon the judgments they caused executions to be issued, levied upon the goods and sold thereunder and that he became the purchaser thereof. That the defendant Barry received from Knapp his proportion of notes for the purchase of the goods, amounting to $2,555,50, and deposited them with Messrs. Strong & Fuller, to be tendered to Knapp in case he should re-sell the goods and accounts to Barry and Howland ; that the goods were not re-sold to Barry and Howland, and that Barry assigned the notes as collateral security for the payment of the debt of the complainants ; that Knapp sold the goods and accounts to Phineas Hardy, upon condition that he should get up the notes given by Knapp, the debt due to Mark H. Newman & Co., and about $1,300 ; and that Knapp received out of the goods and accounts $1,000 beyond said sums, and that he has in his hands at least the sum of $1,000. That Hardy obtained possession of the notes deposited by Barry with Strong & Fuller, without consideration and delivered them to Knapp. That Hardy, in

the summer of 1851, transferred the goods and accounts to Oziel Howland; that he placed Richmond W. Howland in possession of the goods, and gave him full management thereof; that $600 value of goods from Beloit, which had not been sold on execution against Barry & Howland, was also placed in the store and claimed as part of the goods bought by Hardy of Knapp; that the purchase by Oziel Howland from Hardy was a pretended one, for the benefit of Richmond W. Howland; that each of the sales are fraudulent and void as to the creditors of Barry & Howland; that Knapp, Hardy and Oziel Howland have property which ought to be applied upon the judgment and requiring a disclosure from each of the defendants of the matters alleged.

To the bill of complaint, the defendant John N. Knapp did not answer. The remaining defendants answered separately, that the complainants did, on the 30th day of August, 1851, obtain a judgment in the circuit court for the county of Racine, against Alfred C. Barry and Richmond W. Howland, and averred that the signature of Richmond W. Howland to the judgment note, was obtained by fraudulent representations made by John A. Kerr, one of the complainants, and upon the express agreement that the judgment should not be enforced against him or his representatives, but that he wished a judgment entered that he might make Strong & Fuller personally responsible for the amount; that the plaintiffs had received large sums of money from Knapp upon the agreement, and had discharged him from all liability by reason of the judgment, or of the purchase by him of Barry & Howland, of the goods and accounts. They then denied the fraud charged, and also all the other averments of the bill; and stated what was the true consideration of the sale to Knapp. That beside the notes which he gave, he undertook to pay debts to the amount of $6,785 97, due to various persons, including the $1,300 due to Knapp.

The testimony in the case was mainly directed to the issue made upon the fraudulent transfers of the goods to Knapp and to Oziel Howland, but as it is not passed upon by the supreme court, is omitted; except the following: The defendants offered in evidence the judgment roll upon which this action is founded, in order to show that it was entered in vacation and is void. This roll purported to be a judgment against A. C. Barry and others, in favor of the complainants being the one on which this action was founded,

and was not signed by the judge or court commissioner. The roll was rejected by the court.

The court found the following facts : .

" 1. That there is now due the complainants from the defendants Richmond W. Howland and Alfred C. Barry, on the judgment mentioned in the pleadings in this action, the sum of eight hundred and four dollars and eighty-eight cents, together with the interest on the same from the 30th day of August, 1851, to the 18th day of April, 1859, amounting to the sum of twelve hundred and thirty-four dollars and thirty-two cents.

" 2. That the said defendants, Richmond W. Howland and Alfred C. Barry, as the firm of A. C. Barry & Co., on the 8th day of March, 1851, were the owners of four promissory notes given by one John N. Knapp to A. C. Barry & Co., or bearer, all bearing date January 22d, 1851, and described as follows, to wit: One note of five hundred dollars, due in two years from the date, upon which there had been indorsed $195 50 ; and three notes of seven hundred and fifty dollars each, due in three, four and five years from the date respectively, all without interest ; and that the present worth of the said notes, to wit—on the 18th day of April, 1859, is the sum of three thousand three hundred and fifty-four dollars and eighty-nine cents.

" 3. That on the said 8th day of March, 1851, the said defendants Phineas Hardy and Oziel Howland, at Racine, in the State of Wisconsin, had said notes in their possession, and then and there wrongfully converted said notes to their own use and benefit, and then and there received to themselves the full amount of said notes, and that they thereby became and now are liable to account to the creditors of the said A. C. Barry & Co., for the full amount and value of said notes, and that the said fund is now in their hands and amounts to three thousand three hundred and fifty-four dollars and eighty-nine cents.

" 4. That the said complainants, by virtue of their proceedings in this action, have acquired an equitable lien upon said fund, and are entitled to have their said debt satisfied therefrom, and that the said complainants are entitled to judgment against all of the said defendants for the amount of their said judgment, and interest amounting to the sum of twelve hundred and thirty-four dollars and twenty-two cents, with costs, to be taxed against the said defendants."

. Upon this finding judgment was entered April 18, 1859, and this appeal was taken.

*Paine & Millett*, for the appellant, made the following points :

1.  The judgment, execution and sheriff's return being all absolute nullities, the circuit court had no jurisdiction over the subject matter to make any decree whatever in the case in favor of the complainants.

2.  The answer of the defendants, admitting the judgment as stated in the bill, did not confer jurisdiction upon the court.  Rev. Stat., 1849, chap. 84, § 7; *Wright vs. Douglass,* 10th Barb., 99; *McDonald vs. Crocket,* 2d McCord, 135; *Fairly vs. Fairly,* 1st McCord, 513; *Bouroughs vs. McNeal,* 2d Dev. & Batt., 297; *Dakin vs. Demming,* 6th Paige, 99; *Harrington vs. People,* 6th Barb., 610; *Adams vs. Saratoga & Wash. R. R. Co.,* 11th Barb., 414; *Broadhead vs. McConnell,* 3d Barb., 175; *Chalmers vs. Hatch,* 19th Maine, 124; *Brinkerhoof vs. Brown,* 4th J. C. R, 671; Adams' Equity, 130; *Jeffries vs. Harbin,* 20th Ala., 387; *Abel vs. Bloomfield,* 6th Texas, 263.

*Cary & Pratt*, for the respondents, commented in their brief upon the facts of the case, to sustain the finding of the circuit court ; and answered the points made by the appellants as following :

The question of jurisdiction urged by the counsel in the court below, and insisted upon here, is not in the case.  The recovery and docketing of the judgment, the issuing and return of execution, and the then present existence and binding force and efficacy of the judgment, are fully alleged in the bill, and admitted by all the several answers.  These facts established by the record could not be impeached or invalidated by evidence.  *Grandiu et al. vs. Le Roy & Smith,* 2 Paige, 509; *Bank of Utica vs. City of Utica,* 4 Paige, 399 ; *Cumming vs. Mayor, &c.,* 11 Paige, 596 ; *Bank of Utica vs. Merserau et al.,* 3 Barb. C., 528, 574.

*By the Court,* PAINE, J.  This was a creditors' bill, brought by the respondents against the appellants.  There were the usual allegations of the recovery of a judgment at law against the defendants, Barry & Howland, issuing and return of exe-

cution, &c. The answers admitted the existence of the judg-
ment at law as alleged, and the issue and return of the execu-
tion thereon. But at the trial the defendants offered evidence
to show that there was no judgment ever rendered, for the rea-
son that the record was not signed, as this court held necessa-
ry; 5 Wis., 138; the decision having, however, been made after
the answers were put in. This evidence was rejected, and the
principal question argued here by the appellant's counsel, was
as to its admissibility. He urged that the existence of the
judgment, which the bill was filed to aid, was essential to the
jurisdiction of the court, and that being so, the answer of the
defendants admitting the judgment did not deprive them of
the right to object to the jurisdiction for that cause, upon the
ground that when the court has no jurisdiction of the subject
matter consent cannot confer it. But we think the counsel
has misapprehended the application of this principle; and
that it applies only where the court has no authority to adju-
dicate upon the subject matter at all, and not where its gene-
ral jurisdiction over it is conceded; and the only question is
whether in the particular case such facts exist, as bring that
case within this general jurisdiction.

Thus, if a court has only civil jurisdiction, and if it should
sentence a party for a crime, even though he went before it
and consented to be tried, its judgment would be a nullity;
because the consent could not confer the jurisdiction. But, if
the court had authority to try him for that crime, and to sen-
tence him if guilty, and to a proper indictment he should
plead guilty, he could not afterwards, upon that state of
pleadings, claim the right to prove that he was not guilty.
For although the power of the court to inflict the sentence
depends on the guilt of the party, yet it is not upon the ab-
stract question of guilt, but whether the guilt has been made
legally apparent in the suit; and, therefore, the party having
admitted it according to an authorized method of proceeding

in such suit, he could not, without withdrawing his plea of guilty, object to the power of the court to render judgment upon the ground that he was really not guilty. So, if a court has authority to entertain suits upon promissory notes, if such a suit is brought, and the existence of the note averred, if the defendant in his answer admitted it, he could not upon that pleading be permitted to disprove the existence of the note.

And, neither in the criminal case supposed, would the offer to prove innocence, nor in the last, the offer to prove non-existence of the note, raise any question as to the jurisdiction of the court. For although in the one case, guilt, and in the other, the note, constituted the entire ground of action, and was essential to authorize a judgment; yet that goes only to the cause of action, and not to the jurisdiction of the court. For if the court has authority to render a judgment for the cause of action set forth in the complaint, then it has jurisdiction of the subject matter of the suit, and whether the cause of action exists or not, is the very question it is to try. And this, of course, should then be tried according to the established rules and methods of proceeding. Where issue is taken upon a fact, it is to be tried upon the evidence; where it is admitted by the pleadings, that establishes it for all the purposes of the suit. If a party, therefore, admits a cause of action set up against him in a suit before a court which has lawful authority to render a judgment for that cause of action; this is not conferring jurisdiction by consent upon the court, even though the cause of action did not exist; but is simply admitting by the pleadings facts which it would otherwise have been necessary to establish by evidence. The power of the court to try the case being conceded, the parties are as much bound by admissions of facts in pleading, as they would be by a verdict establishing them upon the trial.

We think these considerations dispose of the question pre-

sented here. The general jurisdiction of the circuit courts in suits by creditors' bill is conceded. Undoubtedly the existence of the judgment at law constitutes the whole foundation of the right of action in such a suit. But the power of the court to entertain the suit and to give the proper relief, if such judgment is shown, being conceded, the question of its existence becomes then a mere question of fact, relating to the cause of action, and is to be determined either upon the pleadings, or the evidence, in the same manner and by the same rules that such questions of fact are determined in all other cases. The answers, therefore, having admitted the existence of the judgment, the defendants could not introduce evidence to disprove it. They were estopped by their pleadings. And it was not contended that it could be done, except for the purpose of disproving jurisdiction over the subject matter.

But we think, as already stated, such proof would not raise that question. To determine that, the facts stated in the complaint must be taken as true. If they then present a case which authorizes a judgment, the court has jurisdiction of the subject matter. It is conceded here that the complaint did present such a case. The very question which the court had the jurisdiction to try was whether that cause of action really existed; and the proof offered tended only to show that it did not exist, and not to show that the court had no jurisdiction to determine it, and render a judgment if it did exist. Disproving a cause of action is not showing that the court had no jurisdiction of the subject matter. The question, therefore, of conferring jurisdiction by consent was not presented, because there was no attempt to submit to the court any question, which by law it had no authority to determine.

Suppose the existence of the judgment had been denied by the answers, and the court had tried the question and

found its existence and rendered judgment; could that judgment have been attacked collaterally, on the ground that there was no jurisdiction over the subject matter? Clearly not; as little could it be done, if admitted by the pleading. But it might be done in either case, if there was no jurisdiction of the subject matter.

We do not think the essential facts constituting the cause of action here, are to be considered jurisdictional facts, within the rule so frequently and often so rigidly applied to the action of inferior tribunals and officers. But, even if they were, the same result must follow. For even if the existence of the judgment was a jurisdictional fact, it was a fact triable in that suit. And if triable, it must be tried according to established rules. If denied, it must be proved; if admitted, it would then have been legally ascertained for all the purposes of the suit.

But I do not mean by this to say that the judgment of every tribunal as to its own jurisdiction is conclusive. That I have always denied. If a court decides that it has power to try a case and render a judgment, which by law it has not, such decision does not give it the power. Its judgment may be questioned any where for want of jurisdiction. But if a tribunal is authorized to act upon a certain state of facts, and also to try whether the facts exist, then if they are properly alleged before it, and the parties are legally notified and have opportunity to contest them, the finding of such a tribunal upon those facts would be the finding of a competent tribunal, and ought to be conclusive until reversed in a direct proceeding.

I think there is a clear distinction between the finding of such facts and the decision of a court, that as a matter of law it has jurisdiction where it has none. Because in the one case it has authority to try the facts; in the other it has no authority at all, though it decides that it has. And although

the authorities upon this subject are full of uncertainty, this distinction is recognized, and seems to me to rest upon solid reasons. It is recognized in *Brodhead vs. McConnell*, 3 Barb., 187–8; and in *Betts vs. Bagley*, 12 Pick., 582–3; also, in *Brittain vs. Kinnard*, 1 Brod. & Bing., 432; which is the leading case upon the subject. In that case the magistrate had jurisdiction to seize gunpowder in any boat on the river Thames. Under that authority he seized and condemned a vessel with masts, which was admitted not to be a boat within the act. He was sued in trespass, but the court held his finding, that it was a boat conclusive.

And this case establishes what I believe to be the true rule, that although such facts have been treated as jurisdictional, yet that, strictly speaking, they are not so. Because, while conceding that the vessel seized was not a boat within the act, they yet held that the magistrate had jurisdiction; because he had power to decide whether it was a boat or not, as a part of the offense charged, and this power constituted the jurisdiction and not the actual fact. All suits and judicial proceedings are instituted to try questions of fact, and when they are instituted with proper allegations before a tribunal authorized to try them, it is not sound logic to say that the jurisdiction of this tribunal depends on the actual existence of the facts alleged. And the neglect of this distinction, growing out of the great strictness with which the proceedings of inferior tribunals have been regarded, has, I think, given rise to much confusion and inaccuracy, and has led courts, in many instances, to hold facts jurisdictional which were not so. The true rule would seem to be in all cases, that where the allegations are so made that the tribunal has authority to proceed and try them, and to render judgment according to its finding, it has then jurisdiction of the subject matter. I have thus alluded to what I conceive to be the true rule in respect to such so called jurisdictional facts, for

Vol. X.                    2

the purpose of showing that even if the existence of the judgment here had been such a fact, it was still competent for the court below to have tried and determined it conclusively, unless directly reversed, and that therefore it was triable by the same rules that govern the trial of all other questions.

When looking into the evidence as to the other matters alleged, we think it sustains the finding of the court below.

The judgment is affirmed with costs.