Common Pleas Court of Williams County.

FIRST NATIONAL BANK OF MONTPELIER v. MULLEN ET AL.

Decided, November 11, 1907.

*Judgments and Decrees—Grounds for Vacation are Cumulative—Effect of Consent to Vacation and Retrial After Term of Cause Once Reduced to Judgment—Facts Constituting Consent to Vacation—Determination of Validity of Defense—Laches and Estoppel.*

1. The provisions of Section 5354, Revised Statutes, with reference to the vacation or modification of judgments after term, are cumulative merely and not exclusive.

2. Consent by counsel to the opening up of a judgment is a waiver of a formal finding by the court that the defense about to be offered is a valid one within the meaning of Sections 5359 and 5360.

3. After consent by counsel for the payee to the vacation of a judgment on promissory notes, a request to charge the jury not to undertake to determine the validity of the notes comes too late when all the evidence has been heard, and the right to question the action of the court in vacating the judgment is lost by laches.

4. Courts may, after term, redocket and retry a cause once tried and reduced to judgment, if the parties so request and the subject-matter is within the province of the court to decide; and neither party may withdraw his consent after the new trial has been entered upon.

5. It is sufficient to determine the validity of a defense as a matter of law from the statement pleaded, and the existence of an actual defense to the judgment sought to be vacated need not be established before the order of vacation is granted.

6. The successive steps in proceedings to vacate a judgment after term, under Sections 5354, 5359 and 5360, are: (1) an application filed in the original case, stating the ground of the vacation and the defense, upon which summons shall issue, and no further pleading is required; (2) hearing on the application; (3) if ground for vacation is found to exist and a valid defense is averred in the application, the judgment should be vacated, but the lien of the original judgment saved by suspending the order of vacation pending trial on the merits; (4) a pleading setting up the defense, and a trial upon the issues then made as if no judgment had been rendered; (5) the rendering of a judgment which shall either restore the old judgment or extinguish it, as the facts found on the trial demand.

*C. A. Bowersox, Edward Gaudern* and *S. W. Pressler,* for plaintiff.

*R. L. Starr,* contra.

KILLITS, J.

The unusual complications of this case, out of which has grown an issue almost unique, apologize for this contribution to the literature upon the subject of vacating judgments shown in this case to be already so ample as to confuse lawyers upon the proper practice in such cases.

During the November, 1904, term of this court, four actions, of which this is one, and which were afterwards consolidated into this one, were brought against Austin Mullen and Jennie Mullen, upon eight promissory notes. The plaintiff here was the real plaintiff in all these cases, although one was inadvertently brought in the name of the payee of one note who had endorsed it to the bank. Three of these cases, this one, No. 5046, and numbers 5045 and 5047, were upon notes with warrants of attorney and confessions, upon which judgments were immediately taken against Austin and Jennie Mullen. The fourth, No. 5049, was in five causes upon as many notes, each for less than $100, purporting to have been executed by the above entitled parties. Service in the last action was had upon Jennie Mullen, and judgment therein for $211.39 was taken against her by default at the ensuing term.

A year later, when execution was sought to be levied upon these four judgments on the lands of Alta J. Mullen, who was the wife of Austin Mullen, she began proceedings in this court to vacate each. The proceedings were begun, in each instance, by petition, and were entered upon the appearance docket as new causes, and numbered 5266, 5267, 5276 and 5277. That numbered 5267 was the one appropriate to the judgment taken in cause No. 5049 upon default, and 5266 was directed at the judgment in 5046, the case at bar. In each of the vacation proceedings answers were filed and issues made up as in independent actions, the bank answering as defendant. The petition in No. 5267 sets up the judgment in 5049 as having been rendered by default upon Austin and Jennie Mullen, the issuance of an

execution to be levied upon the lands of Alta Jane Mullen, that the latter "is not the person named as one of the defendants in said cause" (5049), that she "is not the person whose name appears as one of the signers of said several notes," that she never signed either of said notes and never authorized the signing of either of them in her behalf. Then follows this significant paragraph:

"Plaintiff, Alta J. Mullen, further says, that at the dates of the said promissory notes there resided in the village of Montpelier, Ohio, a person by the name of Jennie Mullen, mother of said Austin Mullen; that if said promissory notes are genuine and bear *bona fide* signatures, then such signatures are those of said Austin Mullen and Jennie Mullen, mother of said Austin Mullen."

Further, the petition avers that if the signature "Jennie Mullen" upon either of the notes is claimed to be hers, Alta's, the same is a forgery and the judgment rendered in said cause was obtained by fraud practiced by the said defendant, the bank, plaintiff in the original action, and upon false testimony furnished by it, and that she has a valid and substantial defense against said promissory notes as above herein set forth. Plaintiff further says that her full name is Alta Jane Mullen. The prayer is that if the bank claims that the signature "Jennie Mullen" is hers and not that of the mother of Austin, the judgment be opened and vacated and she be permitted to file an answer and make proof of the falsity of such claims, and "she further prays for all equitable and proper relief in the premises."

The First National Bank of Montpelier, admitting the formal matters, averred that it had intended Alta Jane Mullen when it sued Jennie Mullen in No. 5049, and that she, under such name, did, in fact, execute each of the notes set out in the petition in such case, and knew she was signing the same, and the full purport of her very act, and knew when she filed her petition to vacate that she had executed each of said notes. The answer also says: "That the mother of Austin Mullen has resided in the village of Montpelier, Ohio, more or less of the time for the last five years." The prayer of this answer is that the petition

to vacate the judgment may be dismissed with the costs. The answer also contains a general denial. A reply was filed in the nature of a general denial of all averments of the answer not involving admissions of matters in the petition.

The petitions to vacate in the other three proceedings placed the grounds squarely on the allegation of forgery. At the call of the docket of November, 1906, term of this court, these apparently civil actions were set down to be tried to a jury upon the answer of counsel in this case, each given the same assignment. Number 5266, being the number appropriate to the case at bar (5046), was agreed upon to be tried first, and a jury was actually empanneled to try it, when, upon statement of the nature of the case to the jury, the court called the attention of counsel to the fact that the issue was for the court. Having, however, already made the expense of the jury, and there being no jury case assigned for that day whereby the services of the twelve men in the box might be utilized, the trial judge announced to counsel that he would keep the jury in the box and take its judgment upon the question raised as the ground of vacating, namely, the alleged false signature, counsel being specially notified by the judge that the "verdict" of the jury would be used by the court only as advice as to its duty with reference to vacating the judgment permitting a defense to the note to be interposed. Under these circumstances the hearing continued until the plaintiff, Alta Jane Mullen, was about to rest her case, when counsel for the bank proposed that the judgment in 5046 be opened as asked by Mrs. Mullen and that the evidence in the application on hearing be considered as applicable to the other cases, and the same action be taken as to the judgments in cases numbers 5045, 5047 and 5049, as asked for by her in the proceedings numbers 5276, 5277 and 5267. He also proposed, that if these four judgments were opened up, the four cases, 5045, 5046, 5047 and 5049, should be consolidated into 5046, with leave to the bank to file an amended petition, to which Mrs. Mullen might answer, setting up her defenses. The court, not having been apprised that the judgment in 5049 differed from those in the other cases in that it was upon default, readily

consented to this proposition, as being one in the interest of economy and the dispatch of business. Accordingly, proceedings were dropped in 5266, and this entry was made in the trial docket:

"Heard as to appl'n to vacate. Judg't in 5046 vacated, order of vacation suspended until cause number 5046 be tried. Finding for Pff. Costs of this action to be taxed with 5046."

Substantially the same entries were made in the other proceedings upon the trial docket, numbers being changed to indicate the several judgments affected. By this action the default judgment in 5049 was opened, and there was absolutely nothing before the court, directly or even constructively upon the record in either 5049 or its appropriate proceeding to vacate, No. 5267, to suggest to the court that service of summons was had in 5049 upon Alta Jane Mullen sued as Jennie Mullen. The issues made in the proceedings to vacate No. 5267, were of such a character as to leave the court, had the pleadings been examined, to infer that there may have been a confusion of persons between the wife and mother of Austin Mullen.

These entries upon the trial docket were read in open court to the counsel in the case, who were apparently satisfied therewith. Thereupon the judge presiding, himself, prepared the journal entries which were identical in all four proceedings, that of 5267, touching the default judgment in 5049, reading:

"This cause coming on to be heard upon the pleadings and evidence in behalf of the plaintiff, and the defendant not introducing any testimony or evidence, and the plaintiff having made a *prima facie* case as averred in her petition, it was agreed by the counsel for both parties that so much of the judgment in cause number 5049 on the docket of this court as purports to be against one Jennie Mullen, who is identified with the plaintiff herein, should be and the same is conditionally vacated in order that the plaintiff herein sued in said cause numbered 5049 as Jennie Mullen may file an answer in said cause and defend therein, and it is further ordered that there be no further record of this cause except the entry of this order and that the costs herein made, taxed at $———, be taxed in said cause No. 5049 to abide the result in said cause and the judgment therein upon

the issues to be joined between the plaintiff therein and the plaintiff hereto, made defendant therein as Jennie Mullen, and that said cause No. 5049 be redocketed with leave to plaintiff, sued therein as Jennie Mullen, to plead.''

The four entries so drawn by the trial judge were by him sent to senior counsel for the bank, by bailiff, for such counsel's consideration.    Shortly thereafter the entries were brought back to the judge by counsel's stenographer with an unaddressed letter, which the judge naturally understood was meant for him, and which reads as follows:

''I will hardly have time to look after this entry business and refer it to you.   Will you take up the subject?   I make the following ruggestions:

''1.   I do not know that it makes any difference, but I hardly think the words 'It was agreed,' etc., ought to go in that form.    If the court wishes to say that it was agreed, that the evidence offered should be considered in all the other cases, thereupon he found as he already had, it might not be a matter of objection.    Perhaps it is not anyhow, but you may think of it.

''2.   It seems to me the entry ought to show that upon the motion of the plaintiff bank, all the cases were consolidated or will have them begin to consolidate all of them and bring the action in one suit of the proper number of counts.   What do you think of that?

''3.   It seems to me that it ought to appear in the case of Pressler, the bank has taken and is the owner of that judgment, which as a matter of fact it now is.    I am getting my matters together to be absent for a little while, and must refer this whole matter of these entries to you.''

Long after the entries in question were put on the journal it occurred, on a re-reading of this letter, that, although brought directly to the sitting judge as a seeming reply to his action in submitting the entries, it may have been intended for other eyes. The letter is here quoted to show that the court did not misunderstand counsel for the bank on the proposition to vacate all four judgments and in his suggestion that the bank, after opening up the cases, would ask to have them consolidated.   Only the suggestion marked number one in the letter is pertinent to these four entries, and the language of that paragraph was so enig-

matical that the author of the entries thought that they were not subject to substantial objection by the bank, and, therefore, they were ordered to the journal. There can be no question whatever, but that the entries conform substantially to the proposition of counsel for the bank relative to the opening up of all the judgments, and the court's clear judgment and recollection upon that point is fully supported by the language of the letter above quoted. This proposition was double, first, to open up the judgments, applying the testimony as to 5046 to the other three cases, and, second, to consolidate all the cases under one action, with the new petition counting on all the notes with leave to Mrs. Mullen to answer. It was further agreed that the cause then under consideration, No. 5046, whose judgment was attacked in the proceeding given the number 5266, and then on hearing, was to be the vehicle to bear all the issues. The court thereupon caused the four original cases to be redocketed, and on the trial docket made an entry appropriate to the circumstances. The entry for 5046 reads:

"Redocketed, following order in 5266. Costs in 5266 to abide result of trial of this cause. 5045 and 5047 and 5049 consolidated herewith and Pff. may file amended petition by Jan. 15, next."

The entry on the trial docket for 5049, the default case, reads:

"Redocketed, following order in 5267. Consolidated with 5046. Costs in this and 5267 to abide result in 5046 and to be taxed therewith."

The docket entries for the other two cases were substantially similar, numbers being changed, and to the case which was brought in the name of I. W. Pressler, the bank being the real party in interest, was added: "The First National Bank of Montpelier, a corporation, is substituted as party plaintiff for I. W. Pressler."

These trial docket entries were read to counsel also, and on the next morning, the court having prepared the additional journal entries for each of these matters, one of the latter was read to counsel from the bench, and counsel were informed that

the other three entries were similar to the one read. The entry for 5049 reads as follows:

"Upon motion of Jennie Mullen this cause is redocketed following the order of the court in cause No. 5267, and this cause is by consent of party consolidated with cause No. 5046, in this court, wherein the First National Bank of Montpelier is plaintiff and August Mullen, Jennie Mullen and Mrs. Jennie Mullen are defendants. Judgment in this cause heretofore rendered against the defendant, Jennie Mullen, is vacated in said order of vacation suspended in order to permit said defendant, Jennie Mullen, to defend against plaintiff's cause of action. Costs in said cause No. 5267 to follow this cause."

It will be noticed that in these latter entries the court has followed substantially the suggestions of paragraphs numbered 2 and 3 of the letter above quoted, the only variation being that instead of having the entry show, to use the language of the letter, "that upon motion of the plaintiff bank all the cases were consolidated," it shows that by consent of parties such consolidation was had. It is plain that had the court followed the suggestion and had ascribed to the bank the sole honor of proposing consolidation, the plaintiff would not have been placed in a more favorable light touching the question now before us.

The proceedings detailed above were had on the thirteenth and fourteenth days of December, 1906, being days of the November term, and the foregoing statement embodying documentary evidence of the views of the senior counsel for the bank at the time, we submit, discloses that the action of the court was exactly such as counsel for the bank in open court requested. In addition to the record and proofs submitted, we have distinct recollection that particular pains were taken to meet the views of counsel and no criticism was ever offered to any of either the docket or journal entries which the court was so diligent to bring to the attention of counsel until long subsequent to these dates. We might digress here to say that about six months later, while these matters were pending on the motions about to be disposed of, the court was asked, in behalf of the bank, to allow an exception to be entered, as of the date Decem-

ber 13, 1906, to the order vacating the judgment in No. 5049. This request is naturally opposed by counsel for Mrs. Mullen, and, as it is the undoubted fact that such judgment was opened up at the direct suggestion of the bank through its counsel, that the action of the court, relative to the judgment in 5046, should be applied to 5049, as shown above, we indulge in unwillingness to make the court rediculous by allowing such a retroactive and second-thought exception; wherefore the request is denied.

If further proof be needed to show that the court in all the above but met the wishes of counsel for the bank, it is furnished by the second paragraph of its amended petition filed by it in the original and redocketed cause No. 5046 on January 14, 1907, leave having been taken to file the same before the fifteenth. The paragraph is as follows:

"Said plaintiff says that by agreement of counsel and the orders of the court heretofore made causes No. 5045, 5046, 5047 and 5049 are consolidated in one proceeding as original cause 5046, with the necessary and proper numbering causes of action."

On the fifth of March, 1907, this "Comedy of Errors," as one of the counsel for the bank terms the matter in his brief, proceeds to another act, trial commencing to a jury on the consolidated case, supposedly upon all the issues involved in the four old cases, and upon the entire number of notes. By evening of the first day plaintiff bank had rested, offering all the notes, including the five which were involved in the judgment in No. 5049. The last witness in behalf of the bank was the defendant, Mrs. Mullen, who was placed on the stand for cross-examination, the sole purpose being to bring out the facts, that in January, 1905, the sheriff of this county had served a summons on her relative to the claims of the bank; that thereafter and with reference thereto she had visited the bank, and that she had failed to do anything else in the matter until she began proceedings to vacate more than a year afterwards. While her testimony does not clearly show that the paper served upon her in January, 1905, was the alias summons in 5049, yet the inference that it was such is very strong, and this was the first intimation the court ever

had that a judgment entered upon default had been opened by consent of counsel for the judgment creditor. Even then no one in behalf of the bank suggested repairing any step of the past which had prejudiced the bank, and no motion or intimation of any kind was made to the court that the bank regretted the opening of the judgment, or desired that the issues upon the five notes involved therein he withdrew from the jury's consideration. To our mind this inaction of the bank's counsel, at this juncture when, if the opening up had been inadvertent, a motion might have saved the situation, is significant that the plaintiff was still entirely satisfied to let matters remain as they were. Surely no action of the court, *sua sponte,* was then demanded.

On the third day of the trial, the case was submitted to the jury, not, until the court had withdrawn the first cause of action, Mrs. Mullen having admitted that the Pressler note, upon which it was based, was genuine. Judgment, therefore, was restored immediately to the bank upon this cause of action including all the costs in 5045, in which the judgment was taken, and in 5276, the proceeding to vacate. The other seven notes were submitted to the jury, and each was pronounced by the jury to be a forgery as to Mrs. Mullen's signature, a conclusion in each instance almost inevitable from the testimony.

After three days' trial, and after the arguments had been made to the jury by counsel for the parties, in which the five causes of action upon the notes originally sued on in cause No. 5049 were treated as live causes for the jury's consideration, the bank's counsel for the first time moved the court towards relief against their own action in proposing to open up the judgment in 5049, by making this request to instruct the jury:

"It appears from the exhibits and the admissions of the defendant, Jennie Mullen, that in case No. —— of this court summons issued and was served upon her according to law, and that she failed to answer thereto, but was in default and judgment was rendered in that action against her. The law authorizing the vacation of judgments does not clothe the court with jurisdiction to vacate judgments of that character and only authorize the court to vacate judgments for the specific reason named in the statute. The notes sued on in that action are now

set up in the fourth, fifth, sixth, seventh and eighth causes in
this case and you are instructed to find for the plaintiff on the
fourth, fifth, sixth, seventh and eighth causes of this action.''

This request was refused, the court being of the opinion that
the question involved, if available at all to the plaintiff, should
be raised either by motion to the court directly to reinstate the
vacated judgment or on the application of the verdict to the
judgment, the vacation of which was suspended, pending the
very trial which the plaintiff bank had invoked. Exceptions were
of course given to this refusal to charge.

We have gone into the facts of this cause at great length, first,
because, as against all of the above stated facts, counsel for the
bank now insist that they never intended to consent to the vaca-
tion of the default judgment in cause No. 5049; and, secondly,
because each of the several matters above stated enters intimately
into our conclusions. We feel confident that the foregoing de-
tailed statement of the facts is execusable to make plain just
where the bank's predicament began to develop and who is re-
sponsible therefor.

The case is now before the court upon three motions filed
in behalf of the bank:

First, a motion for a new trial filed in this case within three
days after the verdict, the special grounds being:

''The court at no time found that any of the grounds to
vacate the judgment entered in the original cause No. 5049,
enumerated in Section 5354 of the Revised Statutes of Ohio,
did exist.

''It was at no time adjudged by the court that the defend-
ants had a valid defense to said action.

''The issues submitted to the jury in said cause for its de-
termination were not authorized by law.

''The court has no jurisdiction to enter any order or judg-
ment in said cause, or, in the original causes referred to in the
pleadings in this action.''

There were other grounds alleged, being some of those speci-
fied by the statute, which the court holds to be untenable with-
out argument.

Second, a motion filed in this case a month after the trial, in this language:

"Comes now the First National Bank of Montpelier and moves the court for an order reaffirming the finding and judgment of the court rendered in cause No. 5049 for reasons apparent on the face of the record."

Third, a motion filed two months after the trial, and in the original cause No. 5049, which was then off the docket by an order made a long time before, which motion reads:

"Comes now the First National Bank of Montpelier and moves the court for an order vacating or modifying the action, judgment, order or decree of the court and the journal entry thereof in cause No. 5049, on the docket of this court, of the date of December 13, 1906, wherein and whereby the judgment theretofore rendered in said cause was conditionally vacated, as if by consent, for the reason that there was a mistake in the journalizing the action of the court in the premises in this, to-wit: The journal entry, purporting to set forth the action of the court in said matter, was drafted by the judge of said court, understanding that he had been requested to so draft said entry by counsel for said bank, the said judge not being informed at the time that summons in said action had been issued and regularly served upon said defendant, Jennie Mullen, and that she was in default for answer or demurrer or that said judgment was regularly rendered against her by default, whereas, in fact, said Jennie Mullen had been served with summons in said action and said judgment, so conditionally vacated, was regularly rendered against her by default, and that had said judge been advised of said default he would not have so ordered or prepared said entry."

It will be observed that the draftsman of this last motion does not undertake to claim that the judgment was not in fact vacated by consent, nor that the decree of vacation as journalized by the court was different from the understanding of the bank's counsel, nor that the entry does not in fact conform to the actual situation at the time it was ordered, but asks that everything to the prejudice of the bank be now undone for the reason, quite complimentary to the court at least, that this extraordinary thing would not have taken place had the court known

all the bank's own counsel knew at the time.   We may pass this motion with this comment.   It is overruled.

· The first legal position taken by counsel for the bank in argument touches the first two averments of their motion for new trial quoted above, that the court at no time found grounds existing for vacating the judgment, such as are stated to be essential in Section 5354, Revised Statutes, and that the court failed to adjudge that there was a valid defense to the original action, 5049, as is provided by Section 5360, Revised Statutes; in other words, that the court failed to follow the provisions of Sections 5359, 5360, Revised Statutes.   The vice of the argument is two-fold:   First, in assuming that a court may not vacate a judgment except on one of the grounds set out in Revised Statutes, 5305 or 5354.   In *Brenzinger* v. *Bank,* 19 C. C., 536, Judge Parker, of our own circuit court, says:

"We have no doubt but many cases may arise where a court may properly grant a new trial upon grounds other than those specifically set forth in the statute.   We are of the opinion that the enumeration of certain cases in the statute, which, if established, give a right to a new trial, does not exclude all other cases or deprive the court of its ancient power so fully recognized at common law, to grant new trials for other good and sufficient reasons, though falling short of statutory grounds, to promote the ends of justice."

That this proposition is neither novel nor revolutionary is seen from the decisions of the Supreme Court in *Coates* v. *Bank,* 23 Ohio St., 415, and *Darst* v. *Phillips,* 41 Ohio St., 514, in each of which cases it is held that the provisions of Section 5354, Revised Statutes, are cumulative merely, not exclusive, as counsel argues.

Secondly, counsel is in error in contending that the entry of vacation in this particular case should include an adjudication that Mrs. Mullen had a valid defense.   It must not be forgotten that the bank's representatives distinctly suggested to the court that all four of the cases be treated as if heard and disposed of with 5046 and in a similar manner; that the vacation of the judgment in 5049, as in the other cases, was by consent.   In

*National Home for Dis. Vol. Sol.* v. *Overholser,* 64 Ohio St., 517, 519, the Supreme Court says that parties may waive the statutory grounds for opening a judgment and that a consent to vacation operates as such waiver. It is plain, therefore, that a consent opening waives a formal finding by the court that the defense which the plaintiff consents the defendant may interpose for trial is, if made, a valid one.

The first really interesting proposition in this case is, could the court vacate the judgment in 5049, even by consent, it appearing that defendant, Mrs. Mullen, was not in position to ask such favor upon the facts that were not known to the court at the time, but which afterward came to its attention? Or, in other words, is this attempted vacation of what was practically an irrevocable judgment effective? It goes without saying that the court is constructively chargeable with knowledge of the state of the record with which it is dealing, and if the record is equivocal, the court may act upon it according to the undisputed interpretation of the parties to it, as shown by their conduct in court. This record, in 5049, and in its affiliated case, 5267, was, on December 13, 1906, when the judgment was vacated, equivocal to the court according to the interpretation given it by the conduct of the parties and their silence as to which Jennie Mullen the summons was served upon. The court might well have assumed, did assume, in fact, that the right to vacation depended upon the confusion as to these persons, which fact would have given ground for vacation in behalf of Jennie Mullen, the wife. The pleadings in 5267 left that issue prominent, and the court was justified in thinking that the judgment was subject to vacation when the beneficiary of it consented to such action—even proposed it in the first instance. But, assuming that the court knew its real character, could the court vacate the judgment, even by consent, and reserve the issue for new trial? Could it reasume jurisdiction? This is an interesting question. Upon it the authorities are conflicting. Two cases, *Little Rock* v. *Bullock,* 6 Ark., 282, and *Anderson* v. *Thompson,* 75 Tenn., 259, hold that the court loses its jurisdiction with the first trial, and may not regain it thereafter, even by consent; that all subsequent

proceedings following an agreed vacation are *coram non judice* and void, but the majority of the holdings are the other way. In *Kidd* v. *McMillan*, 21 Ala., 325, it is said that if a court sets aside a judgment by consent and again tries the cause, the later judgment is not void for want of jurisdiction, but the court might have declined to entertain it, and in *Hewetson* v. *Chicago*, 172 Ill., 112, the court says:

"The rule (that the court, after the term, has no jurisdiction to alter or vacate) has no application when the parties voluntarily submit themselves to the jurisdiction of the court at a subsequent term, and ask the alteration, opening for defense, or vacation of a judgment."

Other cases in point are: *Gage* v. *Chicago*, 141 Ill., 642; *Hair* v. *Moody*, 9 Ala., 399; *Royal Trust Co.* v. *Bank*, 55 Neb., 663; *Newman* v. *Newton*, 14 Fed. Rep., 634; *Humphreyville* v. *Culver*, 73 Ill., 485.

Our own Supreme Court has almost decided the question in the *National Home for Dis. Vol. Sol.* v. *Overholser, supra*, when it used this language in the opinion; the case being weakened as a full authority only because of the peculiar facts:

"The circuit court acted * * * apparently upon the impression that the court of common pleas on March 25, 1899, was without jurisdiction to set aside the judgment which it had rendered on the twenty-fifth of November, 1898, although the parties consented thereto. That view of the subject is erroneous. It was not an agreement to confer upon the court of common pleas jurisdiction of a subject-matter. That court is vested by statute with authority to set aside its judgments after the terms at which they are rendered for specified reasons, and when counsel consented that that jurisdiction should be exercised in this case, they did no more than to waive the allegation of a statutory ground for such action."

And upon principle it seems that the majority of the cases are right. Suppose the plaintiff bank should have come into this court and said, "We have an irrevocable default judgment against Jennie Mullen; she slept upon the right to defend, but she insists that we have wronged her by taking it

upon notes that were fradulent as to her.  We, therefore, waive
our right to this judgment, and consent that the court should
grant her prayer for vacation, and set this case down for trial
upon our claim and her defense,'' would there be any reason or
good sense in the court's refusal to permit such a situation to
be worked out?  The facts before us present substantially this
sort of case.  Mrs. Mullen is before the court seeking to have a
confession judgment on what she claims is a forged cognovit note
vacated, as to which she had received no notice (No. 5046).  She
is attacking, in as many proceedings, three other judgments in
favor of the same plaintiff.  She makes a *prima facie* case for
vacation as to the one on hearing, whereupon the judgment
creditor proposes to the court, as the court understood counsel for
the bank, that all should be opened, the four cases consolidated
and the defendant allowed to contest them all.  Would not the
court have made itself absured should it have said to the parties
thus in accord for vacation:  ''No, we can not hear you again on
the default judgment, even though it works a clear fraud upon
Mrs. Mullen?''

The second question of interest is, assuming that the court
could not reassume jurisdiction by consent, but had vacated the
judgment by consent upon a record that bore upon its face an
interpretation favorable to the jurisdiction to vacate, but which
contained a latent infirmity, known to both parties but not to
the court, which destroyed such jurisdiction, could the judgment
creditor, so withholding such knowledge from the court and
consenting to the jurisdiction, be heard to recant after the issues
had proceeded to the length they had gone in this case before
plaintiff bank asked for the instruction relative to the last five
causes of action on trial?

This court will not belittle the intelligence of counsel for the
bank by entertaining the thought that this judgment was allowed
by them to be vacated by inadvertence or without the knowledge
of its character, nor does it listen with patience to the present
insistence in the briefs that they did not consent to the vacation,
in face of the indubitable proofs that they are not merely
agreed to that act, but that the proposition that the evidence

offered in the hearing respecting No. 5046 "should be considered in all the other cases," and that all the cases should be consolidated and "bring the action in one suit on the proper number of counts," was actually "upon the motion of the plaintiff ·bank," as the letter from which the expressions are quoted shows. All three of the bank's counsel were present at all the hearings, and with many of the bank's officers; one of these attorneys took the judgment in question and the record shows that he personally looked after the issuing of the summons upon which Mrs. Mullen defaulted. A month after the proposition to vacate the four cases and to consolidate was acceded to by the court, the bank files an amended petition in which it recites that all four of the old cases are resubmitted for trial "by agreement of counsel." Two months further along, three months after the order of vacation, the court still in ignorance of the facts which the bank's counsel knew, the consolidated case is brought to trial before a jury, and the trial proceeds for three days, to the conclusion of testimony and full presentation of the case to the jury by the cousnel, before any motion is addressed to the court whatever affecting the status of the judgment, although counsel for the bank, on the first day of the trial, in cross-examining the defendant, disclosed a knowledge of all the facts upon which it is claimed the judgment was unimpeachable. And this action is not in the form of a motion to vacate the order of vacation; but is merely a request to charge the jury not to undertake to determine the validity of the five notes sued on in 5049, although in the opening of the case, with the same knowledge of the facts, the issues offered by these five notes were presented to the jury in the statement of counsel for the bank. Was the bank too late in this matter? Ought it to be heard at such a late date to ask the court to retrace all the steps taken, and make a farce of all the previous proceedings? In *Brundage* v. *Biggs,* 25 Ohio St., 651, the Supreme Court holds that a motion to vacate an order vacating a dismissal of an appeal came too late after retrial on the merits, although the movant for such vacating had not consented but had, in fact, objected to the order vacating the dismissal. Here, a party finding that it is beaten on the facts on

ground of its own choosing, asks the court to make sport of the time it has spent upon the case at the very instance of such party.

This the court declines to do. We are confident that the bank, by its own conduct through its counsel, lost the right to ask that the judgment be reinstated, after it had put the issues in the old case 5049 to the jury. Prior to the empaneling of the jury perhaps it would have been the court's duty to put the judgment back upon a showing that, as to the court, at least, the vacation of the judgment was inadvertent, but the application came too late at the end of three days' trial, even if the request to charge may be considered to have been equivalent to a request to reinstate the judgment. To have acted upon it to such end then would have opened the court to ridicule. We are of the opinion that, however the law may be as to the court's right to entertain jurisdiction to vacate a default judgment after term by consent, the right to question its action in that behalf may be lost in an extreme case, by laches or conduct, and that such an extreme case exists here. The principle that jurisdiction can not be conferred by consent is not unlimited. If the court has jurisdiction of a subject-matter, generally, consent may clothe it with power to hear a particular case involving subject-matter of that category, although neither party, because of other matters, could, against the other, invoke such jurisdiction. Having agreed to clothe the court with jurisdiction, and the same having been assumed by the court upon such consent, the parties are thereafter estopped to deny the right to hear the case. *Spring Street, In re,* 112 Pa. St., 258.

The case of *Wanzer* v. *Howland,* 10 Wis., 8, has some close analogy to the point in this case. The action there was a creditor's bill, counting upon judgment. The defendant answered, admitting the judgment, but on the trial he attempted to prove that the judgment was void for non-conformity to local practice. The court denied the testimony, holding that while the existence of the judgment was jurisdictional, the admission in the answer that the same had been rendered estopped the defendant from

endeavoring to discredit the jurisdiction depending upon it to which he had volutarily submitted.

We hold, then, that the court, although it is not obliged to, may, after the term, redocket and retry a cause once tried before it and reduced to judgment, if the parties request it and the subject-matter is one generally within the court's province to decide, and that neither party may recant his consent after the court has entered upon the new trial. It follows from this that the several motions of the bank having reference to the five causes of action embraced in the cause No. 5049 should be and they are overruled, and the suspension of the vacation of the judgment in said cause, ordered pending this trial on the merits, should be ended, and that judgment be now rendered in Mrs. Mullen's favor upon the fourth, fifth, sixth, seventh and eighth causes of action of the consolidated case.

This opinion is already too long to go farther and attempt to set counsel for the bank right on the practice under Sections 5354, 5359 and 5360, Revised Statutes, by comparing what seems to be their erroneous views, as set out in their argument, with the provisions of these statutes. We will end by briefly setting out what seems to us to be the successive steps when vacation of a judgment is sought by defendant after the term, for any reason other than these embraced in the first three sections of Section 5354, Revised Statutes: First, the filing of a petition, containing an averment of a ground for vacation, and allegations suggesting a valid defense. This petition should be filed in the original action, and not under the reverse title and with a new number as if a new case, as was done in the cases at bar. Summons should issue for the plaintiff to meet this application, but the petition need not be pleaded to by the judgment plaintiff; second, a hearing by the court upon the grounds advanced for vacating, and a consideration of the defense offered, as set up in the petition to vacate; third, if grounds to vacate are adjudged to exist, and the court finds that a *prima facie* defense is set up in the averments in that behalf in the petition to vacate, a vacation of the judgment must be ordered and order of vacation

suspended pending a trial on the merits, such suspension to be-come permanent or to be terminated according as the defendant, in the subsequent trial, fails or sustains his defense; this to preserve the lien of the judgment if the new trial is determined against the defendant. It is not required by the practice, as counsel in this case insists, that the court must hear the testimony as to the existence of an actual defense before it may order vacation. The court's duty in that behalf is limited to determination of the validity of the defense from the statement of it which the defendant sets up in his petition to vacate; fourth, an answer setting up defendant's defense to the original petition just as if no judgment had been rendered, followed by a reply, if necessary; and then a trial upon the issues thus made, precisely as if the case had never theretofore proceeded to judgment; fifth, such disposition of the case finally, whether to restore the status of the old judgment or to finally extinguish it in favor of the defendant, as the outcome of trial demands. As we have said, the consent to vacation dispensed with some of the intermediate steps, but, aside from them, the court, in these proceedings, endeavored to, and did, hold the cases consistently to the course outlined above, which is the only one possible, under a logical reading of the several statutes and the decisions annotating them in our books of practice.

To the report of the case of *Smead Foundry Co.* v. *Chesborough,* 18 C. C., 783, is appended a colloquy between each of the judges of the Lucas county circuit court and one of the attorneys in the case, in which the practice is explained. This dialogue is commended to the counsel in the case at bar for their edification.